

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| BOBBY CORTEZ, | | No. 08-11-00306-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 297th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Tarrant County, Texas |
| | § | |
| Appellee. | | (TC # 1214569D) |
| | § | |

## O P I N I O N

Bobby Cortez appeals from his conviction for Indecency with a Child - Exposure. The jury found Appellant guilty and assessed punishment at life imprisonment. On appeal, Appellant challenges the trial court's decision allowing him to proceed *pro se.* Finding no error, we affirm.

### FACTUAL SUMMARY

Stephanie Martinez was pregnant and expecting twins in the Spring of 2010. Her friends hosted a baby shower in the back party room at Billy Miners, a club and restaurant formerly located in downtown Fort Worth. Martinez's young children, as well as many other children belonging to her friends and family, attended the shower.

During the party, Martinez and her guests noticed a man, later identified as Appellant, seated at a table in a nearby courtyard. Appellant was watching his laptop in between glancing at Martinez and the other guests. Toward the end of the party, Appellant stood up and, while facing

the glass windows that separated the party room from the courtyard, began masturbating. Several of the children were within visual range. A restaurant employee called the police and the officers arrested Appellant, searched his computer, and discovered pornography. Appellant had several other prior offenses, including aggravated assault with a deadly weapon in 2007 and aggravated assault with a deadly weapon in 1997.

Appellant filed several *pro se* motions. In May 2011, David Bays, Appellant's court-appointed attorney, filed motions for competency and sanity examinations which the trial court granted. Dr. Satyajeet Lahiri's conducted a competency evaluation, finding that Appellant (1) had the ability to discuss the various legal options available to him, (2) was capable of understanding legal strategies presented to him, and (3) could correctly identify his attorney along with his offense and relevant punishment.

The doctor categorized Appellant's mental illness as a form of paranoid psychoses, auditory hallucinations, and mood instability on Axis I and anti-social personality disorder on Axis II. He concluded that these disturbances did not affect Appellant's competency to stand trial. Dr. Lahiri further noted that Appellant had maintained a fair degree of clinical stability and had logical thought processes and exhibited goal directed behavior. Dr. Kelly Goodness also evaluated Appellant and declared him competent, making similar findings to those of Dr. Lahiri, including the ability to rationalize and understand the charges made against him together with an adequate capacity to discuss the pertinent proceedings at issue, despite his history of mental illness.

Dr. Lahiri also conducted a sanity evaluation. He concluded that Appellant did not meet the criteria for an insanity defense and was sane at the time of the alleged offense. Expressing his concern over the possibility that Appellant was malingering, Dr. Lahiri concluded that it was

likely Appellant fabricated or exaggerated his symptoms at the time of his offense. Due to his long association with the mental health system, Appellant was very familiar with the signs and symptoms of his specific illnesses. Although Appellant had a long history of mental illness, Dr. Lahiri determined that these illnesses were not of sufficient degree or severity, nor did he have the mental defect of the type and degree that rendered him unable to know the difference between right and wrong on or about the time of the alleged offense.

On June 1, 2011, the trial court heard proceedings regarding representation of Appellant, as requested by attorney Bays. These matters included Appellant's competency to stand trial. When the court inquired about Appellant's competency to stand trial, Appellant expressed the opinion that all of his attorneys in the past "never did nothing," and stated, "I want to represent myself. I'm tired of lawyers." The court initially concluded that Appellant was not able to waive his right to an attorney and kept Bays as Appellant's court-appointed lawyer.

On July 28, 2011, the trial court held another pretrial hearing regarding Appellant's request to proceed *pro se*. At the hearing, the trial court properly and thoroughly admonished Appellant, and inquired into the general nature of Appellant's offense along with its sentence; the advantages and disadvantages of self-representation; Appellant's age, background, education and experiences; the need to follow rules of evidence and criminal procedure; and the dangers and consequences of self-representation. The trial judge also discussed the habitual offender notice relevant to Appellant's sentence. Essentially, the trial judge explained that Appellant had prior convictions that categorized him as a habitual offender, and therefore, should the jury find that Appellant committed those prior offenses, Appellant's punishment range would be increased to a minimum of twenty-five years up to and including ninety-nine years, or life. The trial judge

then appointed attorney Bays as Appellant's standby counsel who would remain present while Appellant represented himself throughout trial.

Another hearing on self-representation was held a few days later on August 1, 2011. The purpose of this hearing was to clarify some of the *pro se* motions filed by Appellant. These motions addressed Appellant's intent to present evidence of insanity, to raise the matter of competency to stand trial, and to request a subpoena of Dr. Satyajeet Lahiri. Appellant changed his mind again and indicated to the court that he wanted to be represented by an attorney. He then expressed his desire for a lawyer to "go hybrid" with him. Attorney Bays advised the court that he had previously instructed Appellant that hybrid representation is not permitted in Texas courts. Following a recess, Bays told the court that since the State had not made a plea offer acceptable to Appellant, it was possible that Appellant was under the impression that complaining about his appointed counsel would get him a new lawyer who would then negotiate a more attractive plea bargain. The prosecutor confirmed that the plea offer was not dependent upon counsel, but upon Appellant's specific offense and his criminal history, all which established a legitimate basis for the offer at hand. After a discussion on these matters, the trial judge ruled that Appellant needed attorney Bays to remain as counsel. In addition, the trial court, the prosecution and the defense all agreed that Appellant should undergo another competency and sanity evaluation prior to proceeding to trial.

A few weeks later, on August 23, 2011, the trial court held yet another hearing regarding Appellant's desire to represent himself. Apparently Appellant changed his mind again and informed the court that he no longer wanted Bays to represent him. The court began to admonish Appellant again of the advantages and disadvantages of self-representation. Following the admonishment, Appellant wavered and then settled on allowing Bays continuing to represent.

Bays remained as Appellant's counsel and the trial judge proceeded to arraignment and the presentation of an insanity defense.

That same afternoon, voir dire began. After the State concluded its voir dire, the court took a short break. Upon everyone's return, Appellant expressed his intent to represent himself. The court began to admonish Appellant for the third time of the dangers and consequences of self-representation and further indicated that if Appellant made any other attempts to disrupt or manipulate the proceedings, it would be considered unacceptable and viewed as an attempt at delay. Appellant then signed his second written waiver of counsel and the trial judge finished his admonishment. The trial judge ruled that attorney Bays would remain in the courtroom and continue to act as Appellant's standby counsel for the remainder of trial. Voir dire then continued.

When it was Appellant's turn to conduct his voir dire, he told the trial judge he wished to waive his voir dire and had no questions to present to the jury. The official jury panel was then sworn, seated, and given instructions regarding their duties as jurors. The indictment was read to the jury and, after some confusion as to what Appellant was pleading, the trial judge concluded Appellant had entered a plea of not guilty.

During Dr. Lahiri's testimony, the State questioned him about a mentally ill person knowing the difference between right and wrong and its effect on declaring a person legally insane. Dr. Lahiri's responded that although a person may be psychotic or mentally ill, he will be deemed legally sane if he knows the difference between right and wrong with regard to the crime committed. Dr. Lahiri also testified that during the sanity evaluation, he inquired into whether Appellant would have committed the same offense had a police officer been present. Appellant

answered that he would not have engaged in the same behavior. According to Dr. Lahiri, this was indicative of knowing the difference between right and wrong.

## VALID WAIVER OF RIGHT TO COUNSEL

### *Statement of the Issues*

In Issue One, Appellant complains that the trial court erred in allowing self-representation in violation of the 6th and 14th Amendments to the United States Constitution. In Issue Two, he contends that the court also violated Article I, Section 10 of the Texas Constitution.

### *Applicable Law and Standard of Review*

Both the Sixth Amendment of the U.S. Constitution and Article I, Section 10 of the Texas Constitution provide that a defendant in a criminal trial has the right to assistance of counsel. *Geeslin v. State*, 600 S.W.2d 309, 313 (Tex.Crim.App. 1980). However, coupled with the right to counsel is the right to waive counsel and to represent one's self. *See Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), *citing Faretta v. California*, 422 U.S. 806, 819, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975). "Although the right to self-representation is absolute, a waiver of the right to counsel will not be lightly inferred, and the courts will indulge every reasonable presumption against the validity of such a waiver." *Manley v. State*, 23 S.W.3d 172, 173 (Tex.App.--Waco 2000, pet. ref'd)(internal quotations omitted); *see Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and *Jordan v. State*, 571 S.W.2d 883, 884 (Tex.Crim.App. 1978).

For a defendant to effectively waive the right to counsel and represent himself: (1) the waiver should be made "knowingly and intelligently"; and (2) the defendant should be warned of the "dangers and disadvantages" accompanying such waiver. *See Faretta*, 422 U.S. at 835-36,

95 S.Ct. at 2541. The Texas Court of Criminal Appeals has repeatedly stressed the same requirements. *Goodman v. State*, 591 S.W.2d 498 (Tex.Crim.App. 1979); *Renfro v. State*, 586 S.W.2d 496 (Tex.Crim.App. 1979).

Generally speaking, "the standard for waiving the right to counsel is no higher than for competency to stand trial . . . ." *Chadwick v. State*, 309 S.W.3d 558, 560 (Tex.Crim.App. 2010); *see also Edwards*, 554 U.S. at 172, 128 S.Ct. at 2379, *quoting Godinez v. Moran*, 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d. 321 (1993)("the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself")[Emphasis in original]. However, in *Edwards,* the United States Supreme Court "caution[ed] against the use of a single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial and (2) whether a defendant who goes to trial must be permitted to represent himself." *Edwards*, 554 U.S. at 175, 128 S.Ct. at 2379. The court also recognized a "mental-illness related limitation on the scope of the self-representation right." *Id.* The Constitution permits states to insist upon representation by counsel for those competent enough to stand trial, but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves. *Chadwick*, 309 S.W.3d at 560-61; *Edwards*, 554 U.S. at 174, 128 S.Ct. at 2385. The "mental-illness-related limitation on the scope of the self-representation right" articulated in *Edwards* was recognized by the Texas Court of Criminal Appeals in *Chadwick*, 309 S.W.3d at 560-61.

The trial judge is in the best position to decide whether a mentally ill defendant is competent to proceed *pro se. Chadwick*, 309 S.W.3d at 561; *Edwards*, 554 U.S. at 177, 128 S.Ct. at 2385. Because the issue on appeal is a mixed question of law and fact which turns on an evaluation of credibility and demeanor, we review the trial court's ruling for an abuse of

discretion. *Chadwick*, 309 S.W.3d at 561. We must view the evidence in the light most favorable to the trial judge's ruling, implying any findings of fact supported by the evidence and necessary to support the trial judge's ruling when the judge failed to make explicit findings. *Id.*

If the record indicates a clear expression of the defendant's desire to proceed *pro se,* accompanied by careful and thorough admonishments from the trial court, the reviewing court should conclude that sufficient evidence exists to support allowing for waiver of counsel. *See Barras v. State*, 902 S.W.2d 178, 180-81 (Tex.App.--El Paso 1995, pet. ref'd); *Ford v. State*, 870 S.W.2d 155, 158 (Tex.App.--San Antonio 1993, pet. ref'd); *Hobbs v. State*, 778 S.W.2d 185, 186-87 (Tex.App.--Beaumont 1985, no pet.); *Logan v. State*, 690 S.W.2d 311, 313-14 (Tex.App.--Dallas 1985, pet. ref'd). Although there has been no exact line of questioning set out to establish a knowing and intelligent waiver of the right to counsel, the trial court should at least inquire into the accused's age, background, education and experiences, in addition to making the accused aware of the advantages and disadvantages of self-representation. *Calcarone v. State*, 675 S.W.2d 785, 786 (Tex.App.--Houston [14th Dist.] 1984, no pet.). Moreover, the court should make the accused aware of the general nature of the offense charged, aware that the accused must comply with the rules of evidence and criminal procedure, and aware that the accused will receive no special consideration by the court. *Id.* All of these admonishments should be sufficiently reflected within the record to enable the appellate court to make an accurate assessment of the decision of the accused. *Johnson v. State*, 760 S.W.2d 277, 279 (Tex.Crim.App. 1988).

Finally, the decision to waive the right to counsel does not require an appreciably higher level of mental functioning than is required to execute a valid waiver of other constitutional rights. *Edwards*, 554 U.S. at 172, 128 S.Ct. at 2384. "[T]he competence that is required of a

defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Id.*, *citing Godinez v. Moran*, 509 U.S. 389, 400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)[Emphasis in original].

*Analysis*

The trial court interacted with Appellant on several occasions and thoroughly discussed Appellant's repeated decision to proceed *pro se*, providing the trial court with abundant information with which to determine Appellant's competency to represent himself. The trial court ordered competency evaluations for Appellant by two different doctors and both deemed Appellant competent to stand trial as well as sane at the time of the offense. The doctors' findings therefore support the trial court's ruling that Appellant was competent to represent himself at trial.

We recognize that Appellant does have a history of mental illness. Standing alone, this is insufficient to establish that the trial court abused its discretion by allowing Appellant to represent himself. *Compare Chadwick*, 309 S.W.3d at 562-63 (affirming the trial court's denial of appellant's right to self-representation when appellant put curses on the trial court, interrupted his attorney, launched into rambling monologues and personal attacks, and filed incoherent motions), *with Cudjo v. State*, 345 S.W.3d 177, 186 (Tex.App.--Houston [14th Dist.] 2011, pet ref'd)(affirming determination of competence to waive counsel when, despite evidence appellant suffered from bipolar disorder and was housed in a prison mental health unit, record showed his ability to communicate clearly, conduct himself appropriately and respectfully, proceed in an orderly fashion with trial court's guidance, ask coherent questions, lodge objections, and articulate defenses to the allegations).

The trial court's repeated admonishments to Appellant likewise support the ruling. Appellant had established a pattern of switching back and forth between court-appointed counsel and self-representation. He changed his mind on at least three different occasions throughout trial. Each time, the trial court admonished him. Finally, there is evidence reflecting that the court provided Appellant with standby counsel throughout the trial. Appellant was never alone in the courtroom, and attorney Bays was readily available to assist Appellant in any procedural difficulties he may have had.

Because we must give almost total deference to the trial court's rulings on mixed questions of law and fact when the resolution of the issue turns on an evaluation of credibility and demeanor, and because the trial judge was in the best position to determine whether or not Appellant was competent to represent himself at trial, we conclude there was no abuse of discretion. We overrule Issues One and Two and affirm the trial court's judgment.

April 10, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

## DISSENTING OPINION

I disagree with the conclusions reached in the majority opinion, so respectfully dissent. The evidence is insufficient to support a knowing waiver of Appellant's right to counsel, under the United States Constitution and the Texas Constitution. Therefore, it follows the trial court abused its discretion in allowing Cortez to proceed *pro se*. I would reverse and remand for a new trial.

## PROCEDURAL BACKGROUND

Pertinent to our discussion is the procedural background and Appellant's psychiatric history. In the weeks leading up to trial, Appellant asserted an insanity defense, underwent two psychological examination and several competency hearings, and repeatedly requested to represent himself.  At a competency hearing on June 1, 2011, Appellant made his first request to represent himself.  Prior to this hearing, Dr. Satyajeet Lahiri filed two reports on Appellant's competency to stand trial and his requested insanity defense.  In the sanity report, Dr. Lahiri noted that Appellant had a psychiatric history dating back to age 15 and reported he was suffering from auditory and visual hallucinations and persecutory delusions.  Dr. Lahiri diagnosed Appellant with the depressive subtype of schizoaffective disorder,[1] antisocial personality disorder, a history of poly-substance abuse, paranoid psychoses, and "problems with social environment and legal system."  However, he ultimately determined that Appellant had been sane at the time of the offense and expressed concerns that Appellant was malingering.  In

---

[1]  Schizoaffective disorder is combined mood and psychotic disorder defined in the Diagnostic and Statistical Manual by the following criteria:

> A. An uninterrupted period of illness during which there is a Major Mood Episode (Major Depressive or Manic) concurrent with Criterion A of Schizophrenia.  Note:  The Major Depressive Episode must include Criterion A1.
>
> B. Depressed mood. Delusions or hallucinations for 2 or more weeks in the absence of a Major Mood Episode (Depressive or Manic) during the lifetime duration of the illness.
>
> C. Symptoms that meet criteria for a Major Mood Episode are present for the majority of the total duration of the active and residual portions of the illness.
>
> D. The disturbance is not attributable to the effects of a substance or another medical condition.

American Psychiatric Association, Diagnostic and Statistical Manual (5th ed. 2013).  During the pendency of this appeal, the revised fourth edition of the Diagnostic and Statistical Manual ("DSM-IV-TR") was superseded by the fifth edition ("DSM-5") in 2013, and that Dr. Lahiri properly relied on the DSM-IV-TR to assess Appellant's mental state.  However, "[t]he primary change to schizoaffective disorder [in the fifth edition] is the requirement that a major mood episode be present for a majority of the disorder's total duration after Criterion A has been met." *See* American Psychiatric Association, Highlights of Changes from DSM-IV-TR to DSM-5 3 (2013) *available online at* http://www.dsm5.org/Documents/changes%20from%20dsm-iv-tr%20to%20dsm-5.pdf.  As such, with that caveat, the cite to the definition of schizoaffective disorder is from the most recent edition of the DSM.

the competency report, Dr. Lahiri rated Appellant's insight and judgment as poor, but found that Appellant was competent to stand trial based on the following: 1) that his psychiatric medications partially suppressed his auditory and persecutory-delusional symptoms; 2) Appellant was able to understand some legal strategies; 3) he understood the nature of the offense, and 4) he could communicate with counsel. Dr. Lahiri did not assess whether Appellant was competent to conduct his own defense.

At the first competency and sanity hearing, the trial court inquired whether Appellant felt competent to participate in the trial. Appellant responded, "No, sir. I ain't got my head screwed on right" and "I don't think I'm focused in my brain right now." He also admitted to hearing voices, but insisted on representing himself because he did not trust his appointed counsel on the basis that his past lawyers "never did nothing" and "[a]ll they wanted was a conviction out of me." He further stated, "I can be the lawyer and the next President too. . . . Obama ain't doing too good." The trial court denied Appellant's first request to self-represent.

At a second hearing on July 28, 2011 during a hearing on a motion to quash, Appellant made yet another request to represent himself to a different judge from the first competency hearing. This judge issued a series of warnings about the dangers of self-representation and asked questions about Appellant's background, eliciting that Appellant was 35 years old, literate, had completed a G.E.D., and claimed to have a 106 I.Q.[2] The judge also asked if Appellant felt his mental illness would interfere with trial. Appellant responded that he felt comfortable, but that he might also have a "schizo affected, you know, outbursts" that he would try to control it as best as he could. The trial judge then granted Appellant a waiver of his Sixth Amendment right to counsel and allowed him to defend himself, with his appointed counsel serving only as

---

[2] Dr. Kelly Goodness, in her competency report, assessed Appellant's "intellectual functioning [as] likely in the borderline IQ range.

- 12 -

standby counsel.

On August 1, 2011, the visiting judge held another hearing in which Appellant's competency to stand trial and represent himself was reviewed. Appellant admitted that he did not even know whether he needed to be represented by counsel and stated "right now I don't think I'm competent to defend myself. I need a lawyer, you know. But this one right here I can't do it with him." Appellant's standby counsel stated that Appellant was dissatisfied with the State's plea offer and wanted another attorney on that basis. The trial court then ordered that Appellant be represented by counsel. It also ordered another competency examination performed by Dr. Kelly Goodness.

In her report, Dr. Goodness found that Appellant was not malingering and was competent to stand trial, but she also noted that Appellant had attempted suicide numerous times before, appeared to have a "borderline IQ" intellectual capacity, and exhibited poor judgment generally and that "[h]is judgment for legal matters is minimally adequate." Dr. Goodness did not assess whether Appellant was competent to represent himself at trial, only whether he was able to communicate effectively with counsel. She noted that "[n]o delusions were detected," but that "[h]e reported having past visual hallucinations regarding bite marks from vampires on others' necks, Batman chasing him and aliens." "Most recently, he reported seeing some sort of 'spirit' rise up between people who were talking and twist like a tornado above their heads. He stated this occurred yesterday, but was not distressing to him to a degree that he spoke out. He reported he simply put the cover over his head." He also reported auditory hallucinations, such as the sound of people calling out his name, but that he appeared to generally understand his legal situation. Dr. Goodman stated that Appellant was "not consistently compliant with his treatment" and that "maintaining competence will require medication compliance. If his

- 13 -

medications are completely discontinued, he may become psychotic, irrational and/or overwhelmed by emotion and, thus, he may become incompetent to stand trial."

On August 23, 2011, the day of trial, Appellant made another request to represent himself shortly before the beginning of voir dire. The trial judge from the first competency hearing held another hearing to rule on Appellant's decision to self-represent. At the hearing, Appellant requested new counsel and offered to represent himself if not provided with new counsel. After the trial court issued a new set of *Faretta* warnings, Appellant vacillated on self-representation but then decided to ultimately "let him do it then" and elected to proceed with the assistance of counsel. Later, at the close of the State's voir dire examination, Appellant changed his mind again asserted his right to self-representation for the fourth and final time. The judge and Appellant engaged in the following colloquy:

THE COURT: And I'm not going to delay the trial so you can, as Judge Walker put it a few weeks ago, go to law school. So you can choose to represent yourself, but you are going to be familiar with the Code of Criminal Procedure and the Rules of Evidence, and you are going to have to follow those rules. So knowing that, do you still want to represent yourself?

THE DEFENDANT: Did he [counsel] say he didn't want to represent me or what?

THE COURT: No, no, he says that you wanted to represent yourself. So is that true or not true?

THE DEFENDANT: I thought about it, but he says he will still do it.

THE COURT: He will still do it because --

THE DEFENDANT: Okay, I'll take over. Give me my pen. I will write this down. . . .

The court then allowed Appellant to proceed *pro se*, with Appellant saying, "I figure I

- 14 -

will take it on from here." The jury found Appellant guilty of the single count of indecency with a child and assessed his punishment at life in prison based on two prior felony enhancements.

## DISCUSSION

In Issue One, Appellant argues that the trial court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution by allowing him to represent himself in spite of an apparent lack of mental competency. In Issue Two, Appellant contends that the trial court also violated his rights under TEX.CONST. art. 1, § 10, by allowing him to represent himself at trial based on the same reasons. The Sixth Amendment right to counsel has been selectively incorporated against the states by the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342-43, 83 S.Ct. 792, 795 (1963)(right to counsel implicit in the concept of ordered liberty). Thus, Issue One presents only a single constitutional issue brought under the aegis of linked provisions. Likewise, the challenge under the Texas Constitution presents essentially the same right to counsel claim he brings in Issue One. *Geeslin v. State*, 600 S.W.2d 309, 313 (Tex.Crim.App. 1980). I will discuss both issues in the following single constitutional analysis.

### *Constitutional Framework and Standards of Review*

The Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution both establish a defendant's right to counsel in a criminal trial. *Geeslin*, 600 S.W.2d at 313. Part and parcel with this protection is the constitutional right to have counsel appointed by the court if a defendant cannot afford private counsel. *Gideon*, 372 U.S. at 342-43. The United States Supreme Court has also recognized that the right to counsel encompasses the right to represent oneself at trial by negative implication. *Faretta v. California*, 422 U.S. 806, 834 95 S.Ct. 2525, 2540-41 (1975). The right to self-representation is absolute, save for a

- 15 -

threshold competency inquiry to determine whether special circumstances demonstrate the existence of a "mental-illness related limitation on the scope of the self-representation right." *Indiana v. Edwards*, 554 U.S. 164, 174 128 S.Ct. 2379, 2385-86 (2008). Although the waiver of the right to counsel and the assertion of the *Faretta* right to self-representation occur nearly simultaneously and are often subsumed into one seamless legal analysis, I separate them here into a three-step process in order to articulate the mechanics of a self-representation request and clarify the relevant standards of review at different stages.

As the condition precedent for the assertion of his self-representation right, the defendant must first waive his Sixth Amendment right to counsel. *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex.Crim.App. 1986). *Johnson v. Zerbst*, 304 U.S. 458, 462-63, 58 S.Ct. 1019, 1022-23 (1938). His waiver is constitutionally sound only if he is (1) mentally competent to make the waiver, and only if (2) he waives the right knowingly, voluntarily, and intelligently after receiving proper warnings. *Moore v. State*, 999 S.W.2d 385, 396 (Tex.Crim.App. 1999). At this first step of the process, appellate review is bifurcated. Competency to waive the right to counsel, which is essentially a restatement of the defendant's competence to stand trial, is a mixed question of fact and law reviewed for abuse of discretion. *Chadwick v. State*, 309 S.W.3d 558, 561 (Tex.Crim.App. 2010). Once the threshold competence to waive the right is established, the State then carries the "heavy burden" of showing that a defendant knowingly, voluntarily, and intelligently waived the right to counsel, with this Court indulging "every reasonable presumption against the validity of such a waiver." *Geeslin*, 600 S.W.2d at 313; *Zerbst*, 304 U.S. at 464, 58 S.Ct. at 1023.[3]

Upon validly waiving his right to counsel, a defendant must then "clearly and

---

[3] The burden runs with the State only on direct appeal. On habeas review, the defendant must show that his waiver was invalid by a preponderance of the evidence. *Barras v. State*, 902 S.W.2d 178, 180-81 (Tex.App.--El Paso 1995, pet. ref'd).

unequivocally" assert his *Faretta* right to self-representation at the second step of the process. *Hathorn v. State*, 848 S.W.2d 101, 123 (Tex.Crim.App. 1992). "We review the factual issue of whether a defendant has clearly and unequivocally invoked the right to self-representation for abuse of discretion." *Brown v. State*, 2013 WL 1281917, at *3 (Tex.App.--El Paso 2013, pet. ref'd)(not designated for publication); *DeGroot v. State*, 24 S.W.3d 456, 457-58 (Tex.App.--Corpus Christi 2000, no pet.). If he does not clearly or unequivocally assert his *Faretta* right, or if by subsequent conduct he shows intent to abandon self-representation, the defendant may be presumed to have waived his *Faretta* right. *See Funderburg*, 717 S.W.2d at 642 (noting that this situation constitutes a "waiver of a waiver insofar as the defendant waives his right to waive appointed counsel").

Where a defendant fails to properly assert his *Faretta* right, or where his right to self-representation dissolves, the trial court must appoint counsel over his protest or else be subject to automatic reversal for structural error for denying him his fundamental right to counsel. *Burgess v. State*, 816 S.W.2d 424, 429 (Tex.Crim.App. 1991); *Fernandez v. State*, 283 S.W.3d 25, 31 (Tex.App.--San Antonio 2009, no pet.)(self-representation absent proper waiver and affirmative *Faretta* assertion constitutes denial of right to counsel); *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047 (1984) (lack of counsel where requires constitutes structural error). Likewise, if a defendant who proceeded to trial *pro se* did not first knowingly, voluntarily, and intelligently waive his right to counsel, the trial court will be reversed for structural error. *Fernandez,* 283 S.W.3d at 31.

Finally, where a criminal defendant has validly waived his right to counsel and properly asserted his *Faretta* right, the trial court has the discretion and the independent duty to examine the defendant's mental competence to self-represent and determine whether special

circumstances indicate the presence of a "mental-illness related limitation on the scope of the self-representation right." *Edwards*, 554 U.S. at 174, 128 S.Ct. at 2385-86. A trial court's determination that a defendant is mentally incompetent to conduct his own defense under *Edwards* is reviewed for abuse of discretion. *Chadwick*; 309 S.W.3d at 561.[4] Since the question of mental competency to self-represent presents a mixed question of fact and law that turns on the defendant's credibility and demeanor, the appellate court must accord the trial court "almost total deference." *Riley v. State*, 378 S.W.3d 453, 458 (Tex.Crim.App. 2012).

Against this backdrop, the validity of Appellant's waiver of the right to appointed counsel is reviewed, the sufficiency of *Faretta* right assertion, and whether the trial court abused its discretion by impliedly ruling that Appellant was competent to represent himself.

### Waiver of Faretta right by conduct

As a threshold matter, in this case, Appellant vacillated on the issue of self-representation, and switched back and forth between representing himself and being represented by counsel. As such, turning to whether Appellant's final request to represent himself met the constitutional requirements to waive counsel, the appellate court must first determine whether he in fact waived the *Faretta* right to represent himself. If a determination that Appellant validly waived his right to self-representation, then there is no need to decide whether he properly asserted that right.

Where a defendant has clearly and unequivocally asserted his *Faretta* right to self-representation, he may later waive his *Faretta* rights by conduct. *Funderburg* , 717 S.W.2d at

---

[4] The State cites *Chadwick* for the proposition that the trial court's decision as a whole should be reviewed for abuse of discretion. However, I read *Chadwick* as applying an abuse of discretion standard of review only to the issue of the defendant's competence to waive his right to counsel (which is only one facet of a valid waiver) at the front end of the analysis, and competence to self-represent at the back end of the analysis. In assessing waiver, once a threshold showing of competence to waive the right has been established, the record must show that the defendant made the waiver knowingly, voluntarily, and intelligently, which is a constitutional issue reviewed for harmless error under TEX.R.APP.P 44.2. It seems anomalous that the defendant's right to appointed counsel, a fundamental right guaranteed by the Sixth Amendment, is committed to the discretion of the trial court.

642; *see also McKaskle v. Wiggins*, 465 U.S. 168, 182, 104 S.Ct. 944, 953 (1984)("A defendant can waive his *Faretta* rights."). "This represents in part the waiver of a waiver insofar as the defendant waives his right to waive appointed counsel." *Funderburg*, 717 S.W.2d at 642 n.5 (citing *Chapman v. United States*, 553 F.2d 886, 893 n.12 (5th Cir. 1977)). "A waiver [of *Faretta* rights] may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself." *Id*. (citing *Brown v. Wainwright*, 665 F.2d 607, 611 (Former 5th Cir. 1982)). For example, where a defendant has properly asserted his *Faretta* rights, "the defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether" is sufficient to trigger waiver of the *Faretta* right. *Brown*, 665 F.2d at 611 (citing *Chapman*, 553 F.2d at 893 n.12; *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir. 1976), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327 (1976)); *Carroll v. State*, 176 S.W.3d 249, 254 (Tex.App.--Houston [1st Dist.] 2004)("A defendant who initially asserts his right to appear pro se, but later abandons the right by inviting participation by counsel, waives his right to represent himself.").

If the defendant does waive his *Faretta* right, the trial court ultimately has the discretion to decide whether to allow the defendant to withdraw or reassert self-representation, provided that he does not "repeatedly alternate his position on the right to counsel and thereby delay trial or otherwise obstruct the orderly administration of justice." *Medley v. State*, 47 S.W.3d 17, 23 (Tex.App.--Amarillo 2000, pet. ref'd); *Blankenship v. State*, 673 S.W.2d 578, 585 (Tex.Crim.App. 1984)(the *Faretta* right is timely asserted at any point before impaneling of the jury); *but see Webb v. State*, 533 S.W.2d 780, 784 (Tex.Crim.App. 1976)("[A]n accused may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so that he may retain other counsel.").

Here, Appellant vacillated on the issue of self-representation at least three times, including immediately prior to the impaneling of the jury. Although this case may be a close call, here, because the request for self-representation was made before the jury was sworn, the trial judge had the discretion to entertain the request pursuant to his power to ensure the orderly administration of justice. The record does not indicate any procedurally objectionable issue to show that the trial court abused its discretion by entertaining the motion to invalidate waiver of the *Faretta* right and defer to the trial court's decision in managing its own docket. As such, the trial court's implied ruling should be upheld that Appellant did not waive his *Faretta* right by conduct.

Once it is found the trial court did not abuse its discretion in allowing Appellant to assert his right to self-representation shortly before the jury was impaneled, the next step leads to a three pronged analysis. The appellate court must then turn to the issues of whether Appellant was competent to waive the right to counsel; whether he actually did so knowingly, voluntarily, and intelligently; and whether he affirmatively re-asserted his *Faretta* right.

### *Competence to waive the right to counsel*

In order to be able to waive the right to counsel, a defendant must first possess the mental competency necessary to waive. *Moore*, 999 S.W.2d at 396. Competency to waive the right to self-representation and competency to conduct one's own defense present two separate questions. *Godinez v. Moran*, 509 U.S. 389, 400, 113 S.Ct. 2680, 2687 (1993)("[A] criminal defendant's ability to represent himself has no bearing upon his competence to choose self-representation[.]")[5] Competence to waive the right to counsel is a legal redundancy. "[T]he

---

[5] "The focus of a competency inquiry [at the waiver stage] is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings. [. . .] The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Godinez*, 509 U.S. at 401, 113 S.Ct. at 2687 (internal

standard for waiving the right to counsel is no higher than that of competency to stand trial." *Chadwick*, 309 S.W.3d at 560. In essence, if a defendant is competent enough to stand trial, i.e. if he has the ability to understand the nature of the proceedings and charges against him, he is also competent enough to waive the right to counsel and assert his *Faretta* right to the extent his is not prevented from doing so by mental illness. *Id.* This Court reviews competence determinations for abuse of discretion. *Id.* at 561.

Here, there is no support to show that the trial court abused its discretion in finding Appellant competent to waive the right to counsel. Appellant appeared to be able to acknowledge the seriousness of the charges and appreciate that he was at trial. Although he did not like what his attorney had told him, Dr. Lahiri and Dr. Goodness found nothing that would prevent Appellant from communicating with counsel. Both experts explicitly found that he could assist counsel in his defense. As such, the trial court did not abuse its discretion by finding that he met the threshold competency requirement to waive the right.

### *"Knowingly, voluntarily, and intelligently" waiving the right to counsel and affirmative assertion of Faretta right*

Having found that Appellant had the ability to understand the nature of these proceedings and consult with counsel, the next step is to determine whether Appellant knowingly, voluntarily, and intelligently waived his right to counsel and asserted his *Faretta* right.

A competent criminal defendant may only waive this right if he does so knowingly, voluntarily, and intelligently. *Zerbst*, 304 U.S. at 467-68, 58 S.Ct. at 1024. The "heavy burden" of proof that a defendant knowingly, voluntarily, and intelligently waived his constitutional right to counsel lies at all times with the State on direct appeal. *Geeslin*, 600 S.W.2d at 313. "A

---

citations omitted)(emphasis in original). The focus of the competence inquiry at the self-representation phase is whether a defendant "competent enough to stand trial . . . suffer[s] from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves[.]" *Chadwick*, 309 S.W.3d at 561 (citing *Edwards*, 554 U.S. at 178, 128 S.Ct. at 2388).

waiver of the right to counsel will not be lightly inferred and the courts will indulge every reasonable presumption against the validity of such a waiver." *Id.* (internal quotation marks omitted). As a procedural safeguard against constitutionally insufficient waiver, the Texas Court of Criminal Appeals requires the trial court to issue so-called *Faretta* warnings making the defendant "aware of the dangers and disadvantages of self-representation." *Id.* Failure to issue these warnings invalidates the conviction. *Id.* Where a defendant attempting to assert his *Faretta* rights "is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty." *Zerbst*, 304 U.S. at 468, 58 S.Ct. at 1024; *see also Fernandez*, 283 S.W.3d at 31 (self-representation without proper waiver presents structural error in trial).

Here, the trial court clearly admonished Appellant each time he requested to represent himself that he would be required to abide by the Rules of Evidence and Criminal Procedure, and even went so far as to characterize the decision to self-represent as being a bad idea. As such, the trial court adequately issued *Faretta* warnings. However, the record does not support a finding that the State has affirmatively established that Appellant knowingly, voluntarily, and intelligently waived his right to counsel and reasserted his *Faretta* rights. At the close of the prosecution's voir dire examination but before the jury was impaneled, Appellant apparently sought to represent himself again. He and the trial court engaged in the following colloquy:

> THE COURT: And I'm not going to delay the trial so you can, as Judge Walker put it a few weeks ago, go to law school. So you can choose to represent yourself, but you are going to be familiar with the Code of Criminal Procedure and the Rules of Evidence, and you are going to have to follow those rules. So knowing that, do you still want to represent yourself?
>
> THE DEFENDANT: Did he [counsel] say he didn't want to represent me or what?

THE COURT:       No, no, he says that you wanted to represent yourself.  So is that true or not true?

THE DEFENDANT:  I thought about it, but he says he will still do it.

THE COURT:       He will still do it because --

THE DEFENDANT:  Okay, I'll take over.  Give me my pen.  I will write this down. . . .

In determining whether a defendant has knowingly waived his right to counsel, the trial court need not resort to a formulaic set of questions.  *Blankenship*, 673 S.W.2d at 584.  However, "*Faretta* [likewise] does not authorize trial judges across this state to sit idly by doling out enough legal rope for defendants to participate in impending courtroom suicide; rather, judges must take an active role in assessing the defendant's waiver of counsel." *Id.*  The court should at the very least generally ask questions about things like age, level of education, and the like. *Id.* The record indicates that a previous trial judge had made inquiries into his age, level of education, and familiarity with the legal system at a pretrial hearing on competency.  In these aspects, the previous trial court judge fulfilled part of its responsibility to ensure Appellant properly waived the right to counsel, and it is not necessary to now impose a rule that trial judges in this district must recite some talismanic set of questions to elicit answers that a defendant has previously given before granting waiver of counsel.  *See Blankenship*, 673 S.W.2d at 584 (trial courts do not need to use formulaic questions to assess waiver).

However, the factual circumstances of this case render it different.  During Appellant's final request to represent himself, the trial court failed to make any inquiry of Appellant whatsoever, despite having notice of Appellant's prior mental health history, including the fact that Appellant had previously professed to suffering from hallucinations and persecutory delusions that his own lawyers sought to have him convicted of a crime.  Appellant had also been

- 23 -

held to be incompetent to stand trial in other criminal cases. *Compare Moore*, 999 S.W.2d at 396 (giving of *Faretta* warnings, appointment of standby counsel, and relinquishment of self-representation right to standby counsel after one day was constitutionally sufficient without inquiry into competence where appellant's only claim of incompetence was a prior history of depression and several outbursts during trial). Mental state is fluid, and in cases where a defendant has shown a decrease or the potential for a decrease in cognitive function because of a mental condition, the trial court has a duty under *Blankenship* to appraise itself of a defendant's mental state in assessing competence to self-represent.

The State avers that in spite of any question on mental state from the trial court, the record establishes that Appellant knowingly, voluntarily, and intelligently waived his right to counsel because at the time of the request, he appeared oriented as to time and space, he received *Faretta* warnings, he acknowledged some familiarity with the Penal Code, and he signed a written waiver of his right after previously invoking it several other times. It also cites a string of four cases for the proposition that a clear expression of the desire to proceed *pro se* coupled with proper *Faretta* warnings is sufficient evidence to find knowing waiver. *See Barras v. State*, 902 S.W.2d 178, 180-81 (Tex.App.--El Paso 1995, pet. ref'd); *Ford v. State*, 870 S.W.2d 155, 158 (Tex.App.--San Antonio 1993, pet. ref'd); *Hobbs v. State*, 778 S.W.2d 185, 186-87 (Tex.App.--Beaumont 1989, no pet.); *Logan v. State*, 690 S.W.2d 311, 313-14 (Tex.App.--Dallas 1985, pet. ref'd). These cases are distinguishable from the situation presented here. In *Hobbs* and *Logan*, neither appellant made any claim that they were insane, incompetent to stand trial, or suffered from a debilitating mental health condition. *Hobbs*, 778 S.W.2d at 187; *Logan*, 690 S.W.2d at 313-14. In *Ford*, the trial judge specifically asked the appellant "whether he had mental or physical disabilities." 870 S.W.2d at 158. And in *Barras*, the appellant brought a

habeas corpus challenge that shifted the burden of proof on the waiver's validity from the State to him, thereby explaining why bare evidence of a presumptively valid written waiver resulted in the affirmance of his conviction. 902 S.W.2d at 180-81.

Clearly, the trial court gave adequate *Faretta* warnings, but the record reflects the prosecution has failed to affirmatively demonstrate that Appellant knowingly, voluntarily, and intelligently waived his rights in light of Appellant's mental illness. As to the State's contention that Appellant was oriented as to time and space, "[a] waiver of the right to counsel will not be presumed from a silent record." *Barbour v. State*, 551 S.W.2d 371, 373 (Tex.Crim.App. 1977). The trial court had a duty to appraise itself of Appellant's mental state, given the fact that mental state is not static but changeable, given that Appellant had engaged in a pattern of erratic behavior, and given that at prior hearings he vacillated between self-representation and representation by counsel and admitted to having "schizo affected" outbursts . Upon extensive review of the proceedings, the trial court failed to adequately provide a record that affirmatively shows that Appellant "voluntarily exercis[ed] his informed free will," *Faretta*, 422 U.S. at 834, 95 S.Ct. at 2541, free from the influence of mental disease or defect. The record does not establish that Appellant's perfunctory offer to "take over" constituted a clear and affirmative assertion of his *Faretta* rights, particularly when viewed in light of the fact that he voiced paranoid concerns that his attorney wished for him to be sent to jail. *Cf. Brown*, 2013 WL 1281917 at \*4 (not designated for publication)("[D]issatisfaction with appointed counsel for failing to prosecute motions drafted by him and his request for hybrid representation did not establish a clear and unequivocal assertion of his right to self-representation."). As such, I would hold that Appellant's waiver of counsel and assertion of *Faretta* rights was invalid.

***Mental illness limitation of Faretta rights***

Secondly, I would also hold that the trial court abused its discretion by finding Appellant competent to represent himself at trial. Although the trial court does not appear to have explicitly ruled on Appellant's competency to represent himself under *Edwards*, the reviewing court may assume through the court's conduct that it impliedly found him competent. *See Riley*, 378 S.W.3d at 459 ("We must presume that all findings made by the trial judge were made in favor of the prevailing party.").

Although the right to self-representation is said to be absolute, the trial court has the duty to determine competence to self-represent based on a narrow mental health exception to *Faretta*. *Edwards*, 554 U.S. at 174, 128 S.Ct. at 2385-86. As with competency to waive counsel, the fact-intensive competency determinations on self-representation are committed to the sound discretion of the trial court, *Chadwick*, 309 S.W.3d at 561, and "it is not the province of an appellate court to play the role of the Monday morning quarterback" and second guess the trial court's discretionary decisions merely because they disagree with how it exercised that discretion. *Henderson v. State*, 2007 WL 4439498 *1 (Tex.App.--Texarkana 2007, pet. ref'd) (not designated for publication). However, an appellate court does maintain the power to overturn the trial court's competency determination if they find that its "ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008).

The United States Supreme Court in *Edwards* recognized that a defendant with mental illness can be competent to communicate with counsel and assist in his own defense, yet be incompetent to represent himself. *See Edwards*, 554 U.S. at 175, 128 S.Ct. at 2387. It also recognized that a defendant may knowingly, voluntarily, and intelligently waive his right to counsel and assert his *Faretta* rights during a lucid interval, yet later on lapse into a mental state

that prevents him from being able to represent himself. *Id.*

As such, the *Edwards* court provided for another competency determination separate from competency to stand trial and waive counsel, recognizing that "[m]ental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." *Edwards*, 554 U.S. at 175, 128 S.Ct. at 2387. The *Edwards* competency determination serves as a procedural safeguard allowing the trial judge to ensure due process, the structural integrity of trial, and the dignity of the defendant and the proceedings. *Id*. at 177; 2387. However, mental illness alone is not sufficient to allow the trial court to prevent a defendant from asserting his *Faretta* rights. *Moore*, 999 S.W.2d at 395. "To raise the issue of competency by means of the defendant's past mental health history, there generally must be evidence of recent severe mental illness or bizarre acts by the defendant or of moderate retardation." *Id*.; *compare Cudjo v. State*, 345 S.W.3d 177, 186 (Tex.App.--Houston [14th Dist.] 2011, pet. ref'd)(defendant with bipolar disorder competent to waive counsel absent evidence mental illness interfered with trial or the decision-making process) *with Chadwick*, 309 S.W.3d at 562-62 (affirming denial of self-representation where defendant filed incoherent motions, disrupted trial proceedings, and threatened to place an "Israeli curse" on the trial court). In making a determination on competency to self-represent, the trial court should bear in mind that "[d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant's ability to play the significantly expanded role required for self-representation even if he can play the lesser role of the represented defendant." *Edwards*, 554 U.S. at 175-76, 128 S.Ct. at 2387 (citing Brief for American Psychological Association *et al*. as Amici Curiae Supporting Neither Party at 26).

It is incumbent upon an appellate review to tread lightly when the court weighs the issue of competency of a defendant to self-represent. It is imperative to refrain from any infringment of a defendant's *Faretta* rights by imposing paternalistic restrictions on those rights, and a trial court is properly reluctant to impose counsel where none is wanted. In *Faretta*, the United States Supreme Court invoked the British Star Chamber's practice of appointing counsel over objection as a flagrant due process violation whose commission the Framers of the Sixth Amendment sought to prevent, particularly when reviewed in light of the American colonists' deep-rooted suspicion of lawyers. 422 U.S. at 826-27; 95 S.Ct. at 2537 (discussing "a sudden revival, after the War of the Revolution, of the old dislike and distrust of lawyers as a class" and noting that "[i]n the heat of these sentiments the Constitution was forged"). However, by the same token, blind adherence to the letter of *Faretta* undermines both the dignity and fairness underpinning the right to self-representation when mental illness comes into play. *Edwards*, 554 U.S. at 177, 128 S.Ct. at 2387. "No trial can be fair that leaves the defense to a man who is insane, unaided by counsel, and who by reason of his mental condition stands helpless and alone before the court." *Massey v. Moore*, 348 U.S. 105, 108, 75 S.Ct. 148 (1954).

Here, my review reveals that the trial court abused its discretion in finding Appellant competent to represent himself. In *Chadwick*, the Texas Court of Criminal Appeals upheld the denial of an appellant's *Faretta* rights where evidence in the record indicated he engaged in disruptive behavior, gave a rambling opening statement, and filed several incoherent motions. 309 S.W.3d at 562. Here, the record is replete with stark evidence that Appellant, like Chadwick, was not competent to represent himself at trial. Prior to the date of trial, Appellant filed motions that lacked any sense of coherence whatsoever.[6] He had also on prior occasions

---

[6] For example, the Court reprints Appellant's "Declaration of Conflict Between Attorney and Client and Motion for Substitution of Appointed Counsel" below *verbatim*:

warned the judge about "schizo affected" outbursts, repeatedly asserted and terminated his self-representation rights because he believed his own attorney wanted to send him to jail, and admitted to hearing voices and seeing shadows that did not exist. Thus, the trial court was on notice of Appellant's bizarre behavior.

The trial court was also aware that the behavior likely stemmed from Appellant's deficient intellectual abilities and long history of mental illness. Although both experts found Appellant competent to stand trial, neither assessed his competence to represent himself in a jury trial he had not even prepared for. Nevertheless, there is ample evidence in the record to show that Appellant should not have been allowed to represent himself. Dr. Goodman informed the court that Appellant had a borderline IQ and low intellectual ability, and Dr. Lahiri rated

---

Comes now Bobby Cortez, defendant pro se and layman-at-law, and respectfully moves this court for the substitution of attorney of record David Bays and in support thereof would should unto the court as follows.

Motions are hovering over solid grounds investigators are promised on all sides, interests flat out tired and the construction has rested therefore leaving it a subject to the Fly trap theory.

Furthermore may stress be strickened and consider the weight and balancing test of this document be delivered for the courts discretion. I have been trying to breach understanding, but some of the powers or Force which collided as like thunder causing altered egos base on 'work product' in the class of schemes, for to know is like a fully functional agreement, however it turns out to be.

All the advocate does is makes questionairs and then forbids them on a type of level or desire therefore being an attorney he puts up with it as he pleases and better yet as of experience, you can't hold it against him. If any sense of all; Where does it take us? .. Why this? .. Why me? .. Why certainly? all of a sudden. Once again, let this plea do good to elevate in its range of courage to enlighten this form of magnitude. If it is held, it is only held by theories to be loosened out of the abyss of the matter like there is a root that is steady and firm.

If it is so, may it please the court to spin its reel over to cast out and unravel this dilemma for which is the target of this motherfactor. Strike…on this side, for what is the sole purpose of making up a grievance... it is what it is.

There are many points in this issue of conflict which must be for the need to proceed and not be deceive [sic]. May the almighty power of the court of justice in its district and grant me a fair and impartial claim.

Appellant's insight and judgment as poor. All of those factors weigh against the exercise of *Faretta* rights. *See Moore*, 999 S.W.2d at 395.

Furthermore, Dr. Lahiri's noted that Appellant exhibited "paranoid persecutory ideations of being harmed" and that he was prone to violent outbursts. Both Dr. Lahiri and Dr. Goodness' reports confirmed that Appellant admitted to experiencing auditory and visual hallucinations, even at the time of interview. Dr. Lahiri formally diagnosed Appellant with the depressive subtype of schizoaffective disorder, which is marked by hallucinations and the presentation of symptoms from both major depressive disorder and schizophrenia. *See* American Psychiatric Association, Diagnostic and Statistical Manual (5th ed. 2013). By virtue of the nature of Appellant's mental condition, he exhibited the potential for "[d]isorganized thinking, deficits in sustaining attention and concentration, [and] impaired expressive abilities." *Edwards*, 554 U.S. at 176, 182 S.Ct. at 2387. Appellant's symptoms were only partially suppressed by a medication regimen as per Dr. Lahiri. Additionally, Dr. Goodness stated in her report that Appellant did not use his medication consistently, that "maintaining competence will require medication compliance," and that [i]f his medications are completely discontinued, he may become psychotic, irrational and/or overwhelmed by emotion and, thus, he may become incompetent to stand trial."

A person of sound mind does not need to possess the skill of a trained lawyer in order to represent himself and may freely and as a matter of constitutional right engage in the same poor strategic decisions Appellant made at trial -- for example, waiving voir dire, failing to use preemptory strikes to eliminate pro-prosecution jurors, filing incoherent motions, citing inappropriate passage of law out of context, and speaking only one nonsensical sentence at

closing arguments for punishment.[7] *See Faretta*, 422 U.S. at 834, 95 S.Ct. at 2540-41 (noting that although a defendant "may conduct his own defense ultimately to his own detriment, his choice must be honored out of that respect for the individual which is the lifeblood of the law")(internal citations and quotation marks omitted). However, the evidence demonstrates that even while medicated, Appellant may have been competent to assist counsel in his own defense, but not competent to defend himself.

To allow a lay criminal defendant with borderline IQ and a cognitive disorder who is experiencing partially suppressed paranoid delusions and auditory hallucinations to stand as adversary to a trained lawyer in the well of a courtroom, question child witnesses, and subject himself to the possibility of life imprisonment at the hands of a jury personally selected by the prosecutor does not inspire confidence in the rule of law, the fairness of the verdict, or the legitimacy of this state's courts. *See Edwards*, 554 U.S. at 177, 128 S.Ct. at 2387 ("[P]roceedings must not only be fair, they must appear fair to all who observe them.")(internal citation and quotations marks omitted). In reviewing this case, one can't ignore the question posed to the *Edwards* court by an amicus psychiatrist: "[H]ow in the world can our legal system allow an insane man to defend himself?" 554 U.S. at 177, 128 S.Ct. at 2387 (citing Brief for Ohio et al. as Amici Curiae 24)(internal quotation marks omitted).

The short answer as provided by *Edwards* is that it cannot. In my view, the trial court abused its discretion in permittin1g Appellant to represent himself when it was presented with ample evidence of Appellant's cognitive and psychiatric problems and yet failed to consider

---

[7] The transcript of Appellant's entire closing argument at punishment is as follows:

> THE COURT: [. . .] Mr. Cortez, you have 15 minutes for argument. If you would like to proceed, you may.

> THE DEFENDANT: Blah blah blah blah blah blah blah blah blah blah blah but blah blah blah blah is blah blah blah blah. No further.

them in granting Appellant his *Faretta* rights.

Accordingly, I would sustain Issue One and Two and reverse and remand for a new trial.


April 10, 2014

YVONNE RODRIGUEZ, Justice